## THE GRANGERS' LIFE INS. CO. v. MARY W. BROWN.

1. LIFE INSURANCE. *Applicant's answers. Falsity. Burden of proof.*
   If a suit on a life-insurance policy is defended on the ground that the deceased falsely answered in his application the question whether he had ever received a serious personal injury, the assured need not prove the answer true, though it is a warranty; but the company must show that it is false.

2. SAME. *Exhumation of dead body. When ordered.*
   The exhumation of the body of the deceased, which is under the plaintiff's control, should be ordered in such case, if at all, only on a strong showing that, without its examination, a fraud is likely to be accomplished, which the company has exhausted every other legal means of exposing.

3. SAME. *Evidence. Patient's statements to physician.*
   A patient's statements to his physician, as to what he has heard of a past injury to himself, are incompetent, but are admissible in evidence when they relate to his symptoms at the time they are made.

4. SAME. *Hearsay. Admissions after insurance.*
   Statements by the applicant of facts told him, if made after the policy is issued for another's benefit, are inadmissible in evidence to contradict the written answers in his application.

5. SAME.    *Interest.  Lex loci solutionis.  Lex fori.*
Interest on a life-insurance policy which is payable in Alabama should
be calculated at eight per cent, according to the law of that State,
although the suit is in a court of this State.

6. PRACTICE.    *Continuance.*
It is no abuse of judicial discretion to refuse an application for continu-
ance on the ground of the absence of material witnesses, who have
never been notified to appear, and whose attendance is not stated to
be expected at the next term.

ERROR to the Circuit Court of Chickasaw County.

Hon. J. A. GREEN, Judge.

After this case had been at issue for a year, and twice post-
poned at the company's instance, a third motion for a continu-
ance was made on the ground of the absence of three wit-
nesses who were stated to be material, but who had not been
mentioned in the former applications.  It did not appear that
the witnesses had been summoned, or that any effort had been
made to procure their testimony, and the affidavit failed to
state that they were expected to be in attendance at the next
term.

*Buchanan & Houston,* for the plaintiff in error.

1. An order should have been made for the exhumation and
examination of the dead body.  Power to compel the produc-
tion of evidence is inherent in the court.  1 Greenl. Evid.
§ 309.  The plaintiff is bound to produce evidence in his pos-
session essential to justice, either on motion and affidavit of
the defendant, or petition verified.  3 Starkie Evid. 1722 ; 1
Wharton Evid. 750.  Inspection of the body would have
decided the pivotal question in the suit, and exposed the
attempted fraud.  It was " evidently the object of senses,"
and should have been decided " upon view."  3 Black. Com.
332.  Neither the feelings of the parties nor the sanctity of
burial-places can be used as a cover for deception.  Every
other means of exposing the imposture had been exhausted by
the company before resorting to this application.

2. After the refusal to cause the inspection of the body, it
was erroneous to deny the company time to examine witnesses
to prove the injury.  The presence of these witnesses in court
when the subpœnas for the others were ordered may have

caused the omission of their names. Their depositions may not have been taken, because their names could not be discovered until the application for continuance was made.

3. The answers of the applicant were warranties, and proof of their truth was a condition precedent to recovery on the policy. *Co-operative Association* v. *Leflore*, 53 Miss. 1. Such being the contract, the burden was on the defendant in error to show that the answers were true. *Price* v. *Phœnix Ins. Co.*, 17 Minn. 497; s. c. 3 Big. Ins. Rep. 625; *Wright* v. *Equitable Assurance Society*, 50 How. Pr. 367; s. c. 5 Big. Ins. Rep. 401, 405; Flanders on Ins. 208, § 4; Philips on Ins. 754; *Campbell* v. *New England Ins. Co.*, 98 Mass. 381, 403; *McLoon* v. *Commercial Ins. Co.*, 100 Mass. 472; *Sohier* v. *Norwich Ins. Co.*, 11 Allen, 336; *Davenport* v. *New England Ins. Co.*, 6 Cush. 340; *Craig* v. *United States Ins. Co.*, Pet. C. C. 410; *Huckman* v. *Fernie*, 3 M. & W. 505; *Geach* v. *Ingall*, 14 M. & W. 95. In the case of *Piedmont Ins. Co.* v. *Ewing*, 92 U. S. 377, there was no stipulation that the truth of the answers should be conditions precedent.

4. Interest should not have been calculated at eight per cent from the maturity of the policy. No rate was expressed, and there was no proof as to what interest was due by the law of Alabama, even if the recovery in our courts could be governed by the law of that State, in a matter not part of the contract.

5. Admissions of the applicant made after the policy issued were competent. Although Mrs. Brown was the beneficiary, the application was by R. C. Brown, and the statements of one joint contractor are admissible in evidence against the other who is seeking to enforce the contract. His statements to his physician as to the cause of his sickness were clearly competent. *Aveson* v. *Kinnaird*, 6 East, 188; s. c. 4 Big. Ins. Rep. 575. They were evidence of his state of health. *Kelsey* v. *Universal Ins. Co.*, 35 Conn. 225.

*W. T. Houston*, on same side, argued the case orally.

*Houston & Reynolds*, for the defendant in error.

1. The court, in refusing the continuance, did not abuse its discretion. Subpœnas had never issued for the absent witnesses, and no statement was made that they were ever ex-

pected to be in attendance. *Noe* v. *State*, 4 How. 330 ; *Weeks* v. *State*, 31 Miss. 490. It is not apparent that flagrant injustice was done, and, therefore, a reversal for this cause cannot take place. Exhumation of the body was also properly refused. The court had no such power. Such a proceeding is novel, unsanctioned by principle or authority, and condemned by its monstrosity.

2. It was not incumbent on the plaintiff to show the truth of the answers in the application ; but the company was bound to prove them false in order to avoid discharging the sum due by the terms of their contract. *Piedmont Ins. Co.* v. *Ewing*, 92 U. S. 377 ; *Mutual Benefit Ins. Co.* v. *Robertson*, 59 Ill. 123 ; *Swick* v. *Home Ins. Co.*, 2 Dillon, 160.

3. The policy sued upon is payable in Mobile, Alabama, and will draw Alabama interest, which is eight per cent. Story Conflict of Laws, § 301. The court is required to take notice of the laws of the different States. Code 1871, § 805 ; *Swett* v. *Dodge*, 4 S. & M. 667 ; *Moore* v. *Davidson*, 18 Ala. 209 ; *Lefler* v. *Dermotte*, 18 Ind. 246.

4. Brown's declarations as to the wound on his head made after the policy had issued for the benefit of his wife were properly excluded. *Mulliner* v. *Guardian Ins. Co.*, 1 Thompson & Cook, 448 ; *Washington Ins. Co.* v. *Haney*, 10 Kansas, 525 ; *Rawls* v. *American Ins. Co.*, 36 Barb. 357 ; s. c. 27 N. Y. 282. He could not so affect her interest. The statements to the attending physician were also incompetent. A physician may testify to statements made by a sick or injured person as to his condition and symptoms ; but his testimony cannot include a recital of past events, which the patient made to him. *Ashland* v. *Marlborough*, 99 Mass. 47 ; *Chapin* v. *Marlborough*, 9 Gray, 244 ; *Emerson* v. *Lowell Gas Light Co.*, 6 Allen, 146 ; *Bacon* v. *Charlton*, 7 Cush. 581 ; *Collins* v. *Waters*, 54 Ill. 485 ; *Stewart* v. *Redditt*, 3 Md. 67.

*R. O. Reynolds*, on the same side, made an oral argument.

*Q. O. Eckford*, on the same side.

1. Refusing a continuance cannot generally be assigned for error. Only when flagrant injustice has manifestly been done by a capricious exercise of the judicial discretion will this court interfere. *Bohr* v. *Steamboat Baton Rouge*, 7 S. & M.

715; *Franks* v. *Wanzer*, 25 Miss. 121; *Ogle* v. *State*, 33 Miss. 383; *Lundy* v. *State*, 44 Miss. 669; *Hartford Ins. Co.* v. *Green*, 52 Miss. 332; *Maxey* v. *Strong*, 53 Miss. 280. In this case, there was no unfairness; but the insurance company was favored to the point of harming the plaintiff, and, if any real loss of evidence has happened, which is highly improbable, the company alone is to blame.

2. It is complained that the court refused, on the showing made, to violate the sanctity of a private cemetery. The proposition is revolting. To break the signet of the grave, and take from its resting-place the sacred property of relatives to gratify the corporation's mercenary curiosity, would be worse than Shylock's demand. Is it reserved for this age and this court to decide that the dead may be taken from their sepulchres, inspected, and presented in their awful silent helplessness to the public gaze? A more horrible thought can scarcely be conceived.

3. After a person's death has prevented his confronting the witness, admissions made during his lifetime should be guardedly admitted in evidence. The statements in this case were made after the insurance, and when Brown had no further interest. They cannot be received to contradict his written answers made on a more solemn and important occasion. *Mulliner* v. *Guardian Ins. Co.*, 1 Thompson & Cook, 448; s. c. 4 Big. Ins. Rep. 267; *Stobart* v. *Dryden*, 1 M. & W. 615; *Fraternal Ins. Co.* v. *Applegate*, 7 Ohio St. 292; *Washington Ins. Co.* v. *Haney*, 10 Kansas, 525; s. c. 4 Big. Ins. Rep. 69; *Swift* v. *Massachusetts Ins. Co.*, 2 Thompson & Cook, 302; s. c. 4 Big. Ins. Rep. 300. The case of *Kelly* v. *Universal Ins. Co.*, 35 Conn. 225, cited by opposing counsel, is based on *Aveson* v. *Kinnaird*, 6 East, 188, which *Washington Ins. Co.* v. *Haney*, *ubi supra*, confutes.

4. The number and variety of questions asked in every application for a policy are so great that the attempt to enforce one would be a solemn farce, if the assured was compelled to prove the truth of all the answers in order to recover. Proof must be made after the man who answered is dead, and, therefore, without his sources of information. The questions cover a lifetime. If such a rule prevailed, no one would apply for

insurance.   Bliss on Life Ins. 583; *Swick* v. *Home Ins. Co.*, 2 Dillon, 160; s. c. 4 Big. Ins. Rep. 176; *Mutual Benefit Ins. Co.* v. *Robertson*, 59 Ill. 123; s. c. 4 Big. Ins. Rep. 25; *Trenton Ins. Co.* v. *Johnson*, 4 Zab. 576; s. c. 1 Big. Ins. Rep. 327; *Campbell* v. *New England Ins. Co.*, 98 Mass. 381; *Van Valkenburgh* v. *American Popular Ins. Co.*, 70 N. Y. 605; *Jones Manuf. Co.* v. *Manufacturers' Ins. Co.*, 8 Cush. 82; *Hodsdon* v. *Guardian Ins. Co.*, 97 Mass. 144; *Cluff* v. *Mutual Benefit Ins. Co.*, 13 Allen, 308.   Every presumption of law is in favor of the validity of the contract.   1 Chitty on Contracts, 659; *Williams* v. *East India Co.*, 3 East, 192; *Merrill* v. *Melchior*, 30 Miss. 516.   The defence of concealment is nearly allied to a charge of fraud, and the underwriters, who set it up, have the burden of proof.   2 Greenl. Evid. § 398; *American Ins. Co.* v. *Bryan*, 26 Wend. 563; *Popleston* v. *Kitchen*, 3 Wash. C. C. 138; *Columbian Ins. Co.* v. *Catlett*, 12 Wheat. 383.

CHALMERS, J., delivered the opinion of the court.

This is a suit brought by Mrs. Brown upon a policy of life insurance taken out by her husband in his lifetime, upon his life, for her benefit.   The company defends upon the ground that the husband, in his application for the insurance, stated that he had never received any serious personal injury; whereas, in truth, he had in boyhood received a wound on the head by which his skull had been fractured, and been healed by the operation known as trephining.   Upon the trial, which occurred about two years after the death of the insured, the company asked the court for an order to have the body of the deceased exhumed, with a view of ascertaining whether in fact such fracture had been sustained.   The motion was based upon an affidavit stating that the defendant was advised and believed the fact to be so, but found it impossible to prove it, by reason of the fact that the boyhood of the insured had been spent, and the injury, if it occurred, had been received in Kentucky, and they found it impossible to produce any witnesses, living within the jurisdiction of the court, who could testify to the occurrence.   The motion was denied, and, we think, properly.

We are not prepared to say that in a proper case the court, in the interests of justice, should not compel the exhuming

and examination of a dead body which is under the control of the plaintiff, if there is strong reason to believe that without such examination a fraud is likely to be accomplished, and the defendant has exhausted every other method known to the law of exposing it. We are prepared to say, however, that such an order should be made only upon a strong showing to that effect. It would be a proceeding repugnant to the best feelings of our nature, and likely to be in many cases so abhorrent to the sensibilities of the surviving relatives that they would prefer an abandonment of the suit to a compliance with the order. Without undertaking to define with accuracy what circumstances would justify the making of such an order, we think that a case calling for it was not shown in this instance. The suit had been pending quite eighteen months before it was brought to trial, and during that time no steps had been taken to procure any testimony tending to establish the defence set up, nor was there any competent legal testimony adduced upon the trial with this view. It is true that the physician, who attended the deceased in his last illness (which had no connection whatever with the alleged fracture of the skull), testified that the deceased told him that he had himself been told that when a child of four years of age he had met with such an accident; but it is quite evident that this could not be accepted as a basis for the desired order, since it was itself incompetent testimony. The deceased, according to this statement, knew nothing of the fact except from hearsay, and it is well settled that statements of a patient to his attending physicians are only admissible when they relate to his then present symptoms. If they consist of a narration of past events they are incompetent. *Chapin* v. *Marlborough*, 9 Gray, 244; *Bacon* v. *Charlton*, 7 Cush. 581; *Collins* v. *Waters*, 54 Ill. 485. The physician testified further, that when his patient made this statement to him, he examined his head and found marks of an old cicatrix, but he declined to say that it was evidence of a fracture and of trephining, and thought it equally likely to have been produced in other ways. The defendant then offered to prove by another witness that the deceased had made the same statements to him in relation to his skull having been fractured in childhood, but this testimony

was upon objection excluded, and, we think, properly. Although there is some conflict in the authorities, the decided weight of them holds that no statements of the insured, made after the issuance of the policy, are receivable in evidence to contradict the written statements contained in his application, where the policy is issued for the benefit of another. The insured in such a case is not a party to the record, has no interest in the policy, and, if he is to be considered as the agent of the beneficiary in procuring it, his agency ceases with its issuance, so that there is no legal ground upon which his statements can be received. *Mulliner* v. *Guardian Ins. Co.*, 1 Thompson & Cook, 448; s. c. 4 Big. Ins. Rep. 267; *Rawls* v. *American Ins. Co.*, 27 N. Y. 282; *Fraternal Ins. Co.* v. *Applegate*, 7 Ohio St. 292; *Washington Ins. Co.* v. *Haney*, 10 Kansas, 525.

The court properly instructed the jury that the burden of proving the falsity of the answers contained in the application rested upon the company, and that the assured was not bound to prove their truth, though they were conceded to be warranties. The answers were mostly negative responses to interrogatories, covering every conceivable subject that could be of interest to the insurance company, and seeking information as to the applicant's past suffering from, and present liability to, every disease or casualty known to man. To hold that no recovery can be had until the beneficiary has demonstrated, after the death of the insured, the truth of all these negative responses, would be virtually to declare that no recovery whatever can be obtained upon such a policy. The question is settled in accordance with this view by the Supreme Court of the United States, in *Piedmont Ins. Co.* v. *Ewing*, 92 U. S. 377.

The policy being payable in the city of Mobile, eight per cent interest was properly awarded upon it according to the law of Alabama.

There was no abuse of judicial discretion in refusing a continuance.                              *Judgment affirmed.*